Our fourth case of the morning is in Appeal No. 23-33-36, the United States v. Matthew Browndorf. Mr. Roy, nice to see you. Thank you, Judge. Whenever you're ready. All right. Good morning. May it please the Court. Opposing counsel, Attorney Michael Roy on behalf of Opponent Defendant Matthew Browndorf. The District Court in this case procedurally erred twice while sentencing Mr. Browndorf. I want to start with what I think is the more straightforward of our two claims, which is the leadership enhancement. And our claim here is pretty simple. As this Court has explained in cases like Tate and Zuno, a participant under 3B1.1 is someone who at least provides knowing aid to a conspiracy or to the crime. The judge is finding here that any of the purported participants may have been acting unwittingly, just does not comport with the legal standard. I take it that you are not contesting the underlying facts with regard to what the employees under the defendant did. Is that correct? That's exactly right, Judge Lee. And our view is that Judge Stadmuller definitely could have found that they provided knowing aid. There was enough evidence in the record for him to have made that finding. But there was enough evidence for him to not make that finding too. Lots of things went both ways. There was disputes about how much different employees knew, how much that they were in the dark acting at Mr. Browndorf's behest. And I think the best summation of what I believe Judge Stadmuller's view of the evidence is, after the government asked for clarification, and he kind of describes what sounds more like a negligence standard, that they should have known better. If they had looked at what they were actually doing, they would have seen that it was criminal. But that's not criminal liability. That's not something they could have been charged for. So if our review is de novo, can we take a fresh look at the record and decide for ourselves whether or not the undisputed facts here establish grounds for application of the leadership enhancement? I would say no, Judge. And that's because that would be an issue of fact-finding. That would be more Judge Stadmuller's purview. Like I said, the facts could go either way. And there's kind of a large world of discretion here when it comes to the district court. Do you see any possibility here where if indeed we do send it back, not taking into consideration right now the calculations here, but if we did send it back and Judge Stadmuller had this hearing that Mr. Groundorf could come out worse than he is today? Do you see any possibility of that? No, Judge Rovner, I do not. And frankly, I wouldn't have raised the argument if I thought that was a possibility. The way I see it is I don't think that the world of fact-finding would be reopened on remand. I mean, the government already made its argument twice, both before and after the announcement of what the judge planned to impose. Both times the district court said, well, I'd see it as they could be witting or maybe unwitting. In terms of the inoculating statement, the possibility of the government asking for an upward departure or upward variance based off application note 2, I think there's a lot of problems with the inoculating statement, but the easiest route would be the plea agreement itself, which requires the government to request the bottom of the guidelines, whatever the court decides the bottom of the guidelines is. So if this court holds that the district court misapplied the leadership enhancement, goes back down with the lower guideline range, I don't see how the government could even argue for anything, like even the same sentence now, unless the government breaches the plea agreement. Well, what if the judge is absolutely horrified by what the judge hears? You know, this happens. I just, I don't know. Well, I mean, I think the judge already expressed that now. So if the judge planned to, Judge Stadmiller planned to vary upwards based off his view of the facts, I think he already expressed what he saw as the most disturbing, startling parts of it. Not so much the tax crimes, but the embezzlement of the health funds and the retirement funds, which was relevant conduct, not the count of conviction, but relevant conduct. And, I mean, the government cites some of the striking language Judge Stadmiller used. I don't think that there is more that's going to shock him now. It's more mathematical, the calculation of the guidelines. And he did sentence Mr. Browndorp within the guidelines, and like I said, the government is held to request a bottom of the guidelines sentence. Just for context, I mean, Mr. Browndorp has pleaded guilty to another charge in Maryland, District Court of Maryland. He's going to be sentenced in December. The government has good strategic reasons for, you know, reaching the plea agreement it did here, where it gave up, I mean, frankly, a lot. It gave up the vast majority of the counts. I think, was it 10 counts dismissed? It agreed to a bottom of guidelines. But it's pursuing other charges and other sentences against him at the same time. So this isn't in a vacuum. The Maryland plea is a federal plea? That's correct. Is that the only – well, never mind. That's the only one I'm aware of, Judge Rovner. I don't know if there – there could be civil cases that I'm not aware of. But I'm aware just of the federal Maryland case. Mr. Roy, before you get to your – into your rebuttal time, can I just ask you briefly? I think you have an uphill climb on your position regarding the loss amount. I'm – set aside the point you just made, which is different. But on the loss amount, what troubles me about that is, you know, this here page of the sentencing memo, which you and your adversary are well aware of, and what Mr. Browndorf represents is that the disagreement is on organizer or leader, but his proposed calculation, you know, starts at base offense level 24. So it's just hard for me to see how he presented that objection to the district court.  Well, and I think there's a distinction between the fact of the loss amount and the effect it has on the guidelines. And, you know, I have to admit, obviously he didn't make the point of if the loss amount was lower, that the base offense level should be lower. But setting aside the guidelines for a second, just the loss amount is relevant outside the guidelines. It's relevant to the 3553A – multiple 3553A factors, seriousness of the crime, need for just punishment. So your argument is even if he didn't preserve it as to guidelines, the prior paragraph a few pages earlier may have done it with 3553. That's exactly right. And then as it goes to the guidelines, our position would be that it's not waived because it could not have been an intentional or strategic decision to lose all the benefit of conceding something while still bickering and arguing about the underlying fact. Did the defense receive all the background materials underlying the calculation that is referenced in the PSR? My understanding is no, Judge. However, I was not involved with the trial level. So just based off the record, what my understanding is from the PSR is that the government represented to the parole or probation officer that it had some documents, but the probation officer didn't rely on it. It just relied on the government's assertion. And then the bigger problem is, I mean, I think the hardest part is we don't even know how many subsidiaries are issued. I have no idea. And I don't know if trial counsel knew this or not. I assume Mr. Browndorf knew how many subsidiaries he had, but it's not in the record. And I don't know if it's all employees at all, Pluto Summa subsidiaries. I can't figure out where the 5.4 million came from either. Okay. You want to save that time? Yes, I'll save it for later. Thank you, Judge. You're quite welcome. Mr. Knight, good morning to you. Good morning, Your Honor. May it please the court, my name is Kevin Knight. I represent the United States in the district court below, and I represent it today. Judge Scudder, perhaps it makes sense for me to start with your last comment about where the $5 million comes from. Yeah, I know it's in the PSR. I got that. But what does it represent? Yes, Your Honor. So I think it's worth noting, and I wish I had made this point more explicit in my brief. It is at two separate points in the PSR. I think it's worth noting it is at paragraph 39, the discussion of the enhancement, but it is also at paragraph 21, which is an undisputed fact adopted by the district court. As I say, I wish I had made that point more explicitly in our brief, but I invite Your Honors to look at that paragraph and then compare paragraph 21 of the PSR to page 7 of the transcript where the judge adopts those facts. The judge adopted that figure without objection. And, Judge Lee, to your question, of course, trial counsel had the discovery that's referenced there. Of course, he had the W-2s and the 941s and the witness statements and the payroll processing data from which that figure was derived. Of course he did. So is it – I don't want you to speak outside the record, but is it your understanding that the $5.4 million is just a sum total of the withheld but unremitted payroll taxes? No, Your Honor. It is the combination of the matching portion and the withheld funds from the payroll taxes. That's across the two districts. Okay, the employer and the employee side. Yes, Your Honor. So the employer side is obviously not withheld. Yes, Your Honor. It's just the employee side. And there's no dispute that, of course, that both count as a matter of law for the relevant loss figure. Sophisticated trial counsel for the defendant had the benefit of that discovery, had the benefit of seeing that figure. And just to be clear, he saw that figure at paragraph 21 of the PSR. He saw that figure at paragraph 39 of the PSR. He heard me reference that figure twice during my sentencing commentary, and over and over and over and over again he acquiesced to that figure. That argument is waived. I'm still concerned here. When the district court learned that the IRS's losses were so much lower than previously anticipated, didn't he have an obligation to inquire about the accuracy of the $5 million loss that had been calculated by the government? I mean, I looked through the record, and I couldn't find any support for a total tax loss. Your Honor, it's not surprising that we don't see the W-2s and the 941s in the record because at no point throughout the entirety of this case did the defendant at any time question whether that was the total tax loss associated with this entity. And I think the district court took comfort from sophisticated defense counsel at the trial level making sophisticated objections to those issues for which there were tenable objections. It is not as if the district court was presented with a defense lawyer who was allowing the train to leave the station without saying anything. This defense counsel appreciated that the restitution figures were lower. We see him make the point that in the initial bankruptcy proceeding in California, the IRS advanced a restitution figure that was lower, and he makes the point that under 3523A, it would be appropriate to perhaps vary downward based on that figure that was advanced. It's not as if the district judge saw that discrepancy and it went unremarked upon by defense counsel. On the contrary, defense counsel's invocation of it when discussing the 3523A factors suggests that he was aware of the potential discrepancy and was satisfied that it wasn't an issue worth raising. And over and over and over again, when I brought it up and the probation officer brought up that $5.1 million figure, the defendant did not object. Okay. So, all right. Let's say that we do send the case back. Let's just pretend. Yes, Your Honor. I don't want to pretend that way, but I understand that that's not my call. Yes, Your Honor. How much does he owe? Just give me a figure so I can sleep tonight. Your Honor, all told, across the various entities, that's the figure that he owed. Now, part of the reason, you know, I think defense counsel, during his sentencing commentary in front of Judge Stantmiller, described the restitution figure as the centerpiece of this plea agreement, and he's right. And that figure represented the considered judgment of the government in consultation with the IRS about what numbers we could make sense for the victims of Mr. Browndorf's conduct in Wisconsin. As Your Honors know, the venue provisions with respect to certain tax offenses are perhaps tighter than they are in other areas of the criminal law. So we're dealing with the Wisconsin-based law firm. And in the context of that firm, those were the figures that we were able to negotiate resolution for Mr. Browndorf even with a plea just to the payroll tax offenses. But the total tax law—I'm sorry, Your Honor, go ahead. You were about to do it. That's the prestige, I think, in Magic Judge. It's the third act. But it is that figure. It's that 5.1 figure. And I think it's worth noting that to come to a conclusion other than waiver in this case would create some very perverse incentives. We would essentially be inviting defense counsel to stay silent in the face of at least four opportunities to object to an important issue. Stay silent. Come before this court. And then if my colleague on the other side has his way, not only get a remand based on an unobjected-to guideline calculation, but then preclude the government from adducing the evidence that he complains was not adduced despite not making an objection, that simply can't be the law. Certainly, it's not supported by the Montgomery case that defense counsel adduced in a 28-J letter. And even in Montgomery, we see that in a situation like this where there is at least forfeiture, the government's allowed to supplement the record on remand. And that should at the very least be what this court does. Again, I don't think that that's required here. I think there was waiver over and over and over again when it comes to the total tax laws. But if this court disagrees and finds the issue is merely forfeited, the government should be allowed to supplement the record on remand. Mr. Knight, can I ask you about the aggravating role adjustment? Please, Your Honor. Just to shift over to that. What are we to make of the district court's description of the employees acting wittingly or unwittingly? Your Honor, I think that is— I'll tell you why I'm asking that question. Because an employee that acts unwittingly as to something, it seems very difficult to me that if you stipulate that that person is acting unwittingly, that you could ever convict him of criminal fraud, at least in federal law. I would agree, Your Honor. And I think that concern is what animated me in the sentencing transcript to clarify what District Judge Stadmuller meant exactly by that. Right. No, I saw that. Absolutely. And then we can—let's set aside the inoculating statement business for a second. But if that's right, wittingly or unwittingly is literally the kind of decisive point on whether the aggravating role adjustment could be applied. In other words, if you find that these individuals, the controller, the CFO, et cetera, that they were witting in the fraud, that they knew darn well what Mr. Raundorf was up to and they were facilitating it in one way or another, well, the aggravating role adjustment very well could be sustained, as Mr. Roy is acknowledging. But if your hypothesis is otherwise or your starting point is otherwise that it's unwitting, I'm not sure how they meet the definition of participant. And that's why I think it's so important to focus on Judge Stadmuller's language at page 37 of the sentencing transcript. When I ask him to address the leadership enhancement, he gives the inoculating statement, which I'll set to the side.  But then Judge Stadmuller says that what he means by wittingly or unwittingly is to draw a distinction between individuals on one hand who are technically criminally responsible but go uncharged, and on the other hand, individuals who are both technically criminally responsible and morally culpable such that charges are appropriate. He's drawing a distinction between culpability and responsibility. You can be criminally responsible but not sufficiently culpable that the government sees fit to charge you with crimes. Mr. Roy, I think, characterized that clarification as something that resembled the negligence standard. That's not what that is. That's Judge Stadmuller adopting the government's rationale. As your honors look at the PSR addendum, you'll see, and in our brief as well, we discuss how we believed that PF and MS and BR were technically criminally responsible, but they spoke with us under profit protection, and we ultimately determined that charges weren't merited in their cases, even though they were. What worries me here is, and I appreciate the way Mr. Roy presented his argument, I think it's something you have to grapple with, and that is, it is very possible, Mr. Knight, that the facts allow a finding of participant status and thus the aggravating role. You could do that here, but what I'm wondering about is where to look in the sentencing transcript that we actually have the finding. Yes, your honor, and if the court will indulge me, it's the very last sentence of page 37 of the sentencing transcript. I got it in my hand. And I think perhaps I see that your honor has underlined the part where Judge Stadmuller says that doesn't excuse criminal responsibility. That means that he is finding they are criminal. Well, I don't know. I mean, if somebody acts unwittingly, I don't know how they could be criminally responsible under federal law. I agree. It's not because our, I don't know of any fraud offense in Title 18, you probably don't either, that imposes strict liability without regard to mental state. I'm unaware of any, your honor. And as I say, that's why I think that that clarification is where the court's focus should be. The court, to my mind, should, you know, in the context of the hearing live, I appreciated that what Judge Stadmuller said in a vacuum was perhaps incorrect and not reflective of what he meant. And that's why I asked him to clarify. And in that clarifying statement at the bottom of page 37, I think, again, I want to just underscore for the court, and I know I'm past my time, but I want to fully answer your honor's question. I think it's worth tracking Judge Stadmuller's explanation that I previously explained of the culpable versus the responsible and note the symmetry between the government's position in the PSR addendum and the sentencing memorandum we submitted. He is. And I, yeah, go ahead. I'm sorry, your honor, please. And what is the best quote from the sentencing transcript? I think it. I'm sorry. I'm sorry. That would demonstrate that the district court would have given Brown Dorff the same sentence had he not applied the leadership enhancement. Because all I could see is yes. And your honor, and I agree that that is how it starts, but I think we can widen the aperture a little bit when it comes to the inoculating statement. And I would, I think Mr. Roy and I agree on the doctrinal methodology that applies here. When your honors consider an inoculating statement like this, we assess whether it is sufficiently detailed and then whether it is sufficiently explicative as to why the enhancement is irrelevant to the court's determination. And if your honors want me to stop, I'm happy to. I know I'm past my time, but. No, go ahead and finish your thought. Obviously, this clears prong one. We're obviously talking about the sentencing enhancement. It was the only objection that was preserved. And with respect to the second prong of the analysis, we cited these cases in our brief, and I think they're relevant here. Carraway, Asbury, beginning on, I believe it's page 29 of our brief. Those cases note that the explanation doesn't need to be necessarily lengthy. Carraway says that you need not belabor the obvious. And what would Judge Stattmuller say? Would he say for the third time that he was driven to tears by these victims? Would he say yet again that Mr. Brown Dorff knew better? Would he say yet again that he found the impact on these victims to be devastating? When you read the sentencing transcript, Judge Stattmuller said the harm to these victims jumps off the page. And then he described two separate occasions that he was driven to tears by the victim's statements. I think under Carraway, under Asbury, Judge Stattmuller wasn't required to explain for a third time that he was driven to tears by this case. He wasn't required to explain yet again that when he weighed the 35-53A factors, he found 48 months to be the appropriate sentence. I think Mr. Roy suggests that the fact that the government's recommendation was tied to the bottom of the guidelines cuts in favor of his position. It's exactly the opposite. The fact that Judge Stattmuller jumped the government's position is just one more arrow in our quiver when we say Judge Stattmuller weighed these factors, he dove into this record, he considered the victim's statements, and then when he was asked by me whether he would have given the same sentence, he gave a considered answer. Subject to Your Honor's questions.  Yeah, please. So assume for a moment that we think that we can't glean as much from the transcript as you do. Yes, Your Honor. So then the question becomes do we need to send it back or can we look at the facts since they're undisputed and make our own determination whether as a matter of law that satisfies the requirements of the leadership enhancement? I think Your Honor is exactly right. If I take your question to mean that, of course, this court has long-standing precedent that suggests that there's an independent basis in the record that's undisputed that supports the imposition of the enhancement, the court is free to do that. And I would encourage the court to do that here. And I would encourage the court, if it is inclined to, as you say, Your Honor, if you read the transcript more narrowly than I do, and if the court is inclined to analyze the case in that way, I would encourage the court to not just look at the PSR. It's clear from pages 3 and 7 of the transcript that Judge Stantler was adopting both the PSR and the addendum. And the addendum includes various memorandums of interviews with, I believe it is two, I believe it is MS and BR who are in the addendum. So not only do I think the answer to your question is yes, Your Honor, your purview can, it's fully consistent with this court's precedent to take countenance of that evidence that's undisputed and impose the enhancement if you believe it applies. But I would just, as I say, Judge, I would encourage you to not limit yourself to the PSR and to similarly incorporate the undisputed elements of the PSR addendum in the record. Subject to Your Honor's questions. Mr. Knight, thank you very much. We appreciate it. Mr. Roy? Thank you, Judge. I want to start very briefly with the inoculating statement standard. I don't have the quote in front of me, but I believe this all started with Asbury where there was just a sentence, detailed statement that explains the parallel result that has solely morphed into this sort of like doctrinal two-prong test, which we both discussed in our briefs. But I don't want to miss the forest for the trees here, which is that this is ultimately just standard harmless error analysis. The question is, would the result be the same on remand or would the result have been the same without the error? And it's not just, you know, parsing the judge's language, whether the statement met the two prongs. I think we have to look at everything. And that includes the plea agreement. That includes earlier when the judge was talking about how his view of the sentencing guidelines impact and are always the starting point for him. It's not just whether the word I mean, we disagree on what's involved in the statement, but whether the word yes was enough for that. I also want to talk briefly back about the tax loss claim. I want to be clear that in Mr. Browndorf's sentencing memorandum, he didn't just say I want a departure based off what it would have been if the tax loss was lower. It's at page nine of his sentencing memo. He I admit he could have flagged it better. He could have done more to it, but he does refer to it as these amounts. He contrasts the amount that the government gives against the amounts from the bankruptcy proceeding, the restitution. He calls the alternative loss amounts more realistic than the government's number. That's language of a factual dispute. And in terms of like the question of whether this is going to create bad precedent for preservations. Now, setting aside the guideline parts, just the facts of the loss amount and the rule 32, whether the judge settled the dispute or not. This is not the type of claim that's really ever going to come up unless someone makes an objection. If Mr. Browndorf had said nothing at all, we wouldn't have been able to challenge the tax loss because even conclusory statements in the PSR may be adopted without objection. Unless there's further questions. Okay, Mr. Roy, thank you very much. Mr. Knight, thanks to you. We appreciate the advocacy on both sides. We'll proceed to our fifth argument.